## WILLIAM JONES *v.* THE STATE.

1. ACCOMPLICE TESTIMONY. — The requirements of the Code in respect of accomplice testimony are satisfied if, the *corpus delicti* being proved, there is evidence which, independent of the accomplice's testimony, tends in some degree to connect the accused with the commission of the offense. The rulings on this subject in *Nourse* v. *The State*, 2 Texas Ct. App. 304, quoted with approval.

2. SAME. — Complicity in the commission of an offense does not disqualify the accomplice as a witness; but, to support a conviction, his testimony must be corroborated as required by the Code. Pasc. Dig., art. 3118. See the corroborating evidence held sufficient in this case to warrant a conviction for theft on the testimony of an accomplice.

3. SAME. — In Paschal's Digest, article 3118, the term *accomplice* has a much more comprehensive signification than the technical definition given in article 1814. *Irvin* v. *The State*, 1 Texas Ct. App. 301, cited by the court; and see *Davis* v. *The State*, 2 Texas Ct. App. 588.

4. MISTRIAL. — After a mistrial the *status* of the cause is the same as though there had been no trial, and the case may again be tried at the same term. If the accused desires the trial deferred until the next term, he must make his showing for a continuance.

5. PETIT JURY. — The rulings in *Burfey* v. *The State, ante,* p. 519, respecting the organization of a petit jury, are referred to by the court, and approved.

APPEAL from the District Court of Dallas. Tried below before the Hon. Z. HUNT.

Hatcher, the owner of the cattle stolen, proved fully the *corpus delicti*. He stated that he lived eleven miles north from the city of Dallas; that he saw the cattle near his place the evening of July 24, 1877, before they were taken. He missed them the next day, and, on the following day, found them in Miller & Hook's butcher-pen, in Dallas. He could not say by whom they were taken.

Thomas, for the state, testified that he lived ten miles north of Dallas, and that, on the evening when Hatcher last saw his cattle before they were stolen, he saw the appellant, together with George Martin and Thomas Smith, come out of a thicket. They rode by witness, and went to Giles Armstrong's house, and from there went north, in the direc-

tion of an old camp-meeting ground, around which Hatcher's cattle were accustomed to run. The appellant and Martin had ropes tried to their saddles. Witness was riding a mule.

Clintock, for the state, testified that he saw the appellant, along with Smith and Martin, at Armstrong's house, on the evening of the day referred to by Thomas. They left about dark, and went in the direction of the old camp-meeting ground, near Hatcher's.

John Laws, for the state, testified that he lived on the road leading from Giles Armstrong's to the city of Dallas, and about half a mile south of Armstrong's. Between twelve and one o'clock of the night succeeding the day on which Hatcher last saw his cattle before they were stolen, three men passed witness' house, driving some seven, eight, or nine head of cattle, and going towards Dallas. Witness did not know who the men were.

Miller, for the state, swore that Hatcher's cattle were brought by Martin, Smith, and the appellant to the butcher-pen of witness and Hook, on the morning of the day succeeding that on which Hatcher last saw them before they were stolen.

Hook, the partner of Miller, testified that, when he got up on the morning mentioned by Miller, Hatcher's cattle were in the butcher-pen.

Thomas Smith, the accomplice, testifying for the state, swore that on July 24, 1877, he and George Martin and the appellant started after cattle. About three o'clock in the afternoon, having reached the neighborhood where the cattle were to be got, they lay down in some brush, and remained until about sundown, when they started again, and met the witness Thomas, who was riding a mule. They proceeded to a house where they met the witness Clintock, and from there went north about half a mile and found the cattle they wanted. They agreed that they had better wait until

later in the night, when people would be asleep, before they moved the cattle. About midnight they started with them, and brought them to the city of Dallas, and, just before day, put them in Miller & Hook's pen. Martin paid witness $4 in silver.

For the defense, a sister of the appellant testified that on July 24, 1877, she heard George Martin tell appellant he would give him $2 to help him drive some cattle, and that the appellant went with Martin.

The opinion discloses such other matters as are relevant to the rulings.

*Payne & Payne*, for the appellant.

*George McCormick*, Assistant Attorney General, for the State.

ECTOR, P. J. The appellant, William Jones, was jointly indicted with George Martin and Tom Smith for the theft of two cows and three beef-steers, the property of Henry Hatcher. The appellant alone was tried, and convicted, and his punishment was assessed at two years' confinement in the penitentiary. On the trial the said Tom Smith was placed on the stand, and testified as a witness for the state.

The first question presented in the assignment of errors is that the court erred in failing to charge the jury what was material matter necessary to be proved in order to sustain the testimony of the accomplice tending to connect the defendant, Jones, with the accomplices in the commission of the offense. The third subdivision of the charge of the court is as follows:

"A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed, and the corroboration is not sufficient if it merely show the com-

mission of the offense; and, further, the corroboration must be as to a material matter connecting or tending to connect the defendant with the offense."

We think the testimony of the witness Smith was sufficiently corroborated. The correct rule was laid down by this court in the case of *Nourse* v. *The State*, 2 Texas Ct. App. 304, from which we make the following extract:

"It will be seen that, to justify a conviction on the testimony of an accomplice, there must be some evidence which of itself, and without the testimony of the accomplice, tends in some degree to connect the accused with the commission of the crime. The Supreme Court of California, in the case of *The People* v. *Melvane*, 39 Cal. 614, say: ' The corroborative evidence may be slight, and entitled to but little consideration; nevertheless, the requirements of the statute are fully fulfilled if there be any corroborating evidence which *tends* to connect the accused with the commission of the offense.' This decision was rendered under a statute very similar to ours in regard to the corroboration necessary to be had to the testimony of an accomplice, to support a conviction. Article 375 of the Code of California is as follows: ' A conviction cannot be had upon the testimony of an accomplice unless corroborated by such other evidence as shall tend to connect the defendant with the commission of the offense, and the corroboration shall not be sufficient if it merely shows the commission of the offense, or the circumstances thereof.' It is a mistaken idea to suppose that the corroborating evidence must conclusively, of itself, connect the defendant with the commission of the offense. If so, there would be no use for the testimony of the accomplice."

In the case now before the court the testimony is conclusive that certain cattle described in the indictment, the property of one Henry Hatcher, were stolen from their owner, in Dallas County, on July 24, 1877, and there are some facts

deposed to, independently of the evidence of the accomplice or accomplices, tending to connect the defendant, Jones, with the commission of the crime.    See, also, the opinion of the court in the case of *The People* v. *Cloonan*, 50 Cal. 449.

The second charge asked by the defendant, taken as a whole, was not correct as a proposition of law.    The word "accomplice," as used in article 3118, Paschal's Digest, has a much broader interpretation than defendant asked the court to give it in this instruction to the jury. *Williams and Smith* v. *The State*, 42 Texas, 392 ; *Berrera* v. *The State*, 42 Texas, 263 ; *Irvin* v. *The State*, 1 Texas Ct. App. 302.

The third special charge which the defendant asked the court to give to the jury was as follows : " That there is no testimony of any witness corroborating Smith, the accomplice, to any matter material tending to connect the defendant with the commission of the offense charged, and thus must acquit."    The court properly refused to give this charge.    The defendant also asked the court to instruct the jury " that, if the jury had any reasonable doubt in reference to whether Jones knew of the intent on the part of Martin and Smith to steal the cattle, he is entitled to the benefit of that doubt."    This charge the court gave the jury.    No other additional instructions were asked by the defendant, and no exception at the time of the trial was taken by him to the charge of the court.    The court gave such instructions as were applicable to every legitimate deduction which the jury could draw from the facts, and we find no error, in the charge, that was calculated to injure the rights of the defendant.

In this case there was a mistrial, and at the same term defendant was again placed on trial, over his objections. When the case was called for trial the second time, the county attorney announced ready for trial.    " The defendant, being called upon, said he was not ready, but refused to make any announcement, upon the ground

that he had been placed upon trial for the same offense charged in this case, to wit, on the 27th of September, 1877, being at the present term of this court, and the jury having failed to agree, and that he did not wish again to be tried at this term of the court, particularly as he did not have his witness present, but made no further application for a continuance ; whereupon the court ordered the trial to proceed."

After the mistrial the cause stood as it did before the mistrial, and, if defendant had any cause to claim a continuance, he should have made his application in the terms of the statute. Pasc. Dig., art. 2982 *et seq*. In cases of mistrial the Code of Criminal Procedure provides that the cause may be again tried at the same or another term. Pasc. Dig., art. 3086.

The court did not err in refusing to exclude the testimony of the witness Miller. If it is true that this witness is an accomplice, he is a competent witness, subject to the rule that his evidence must be corroborated to warrant a conviction upon it. The court also properly refused to exclude the testimony of the witnesses Thomas, Clintock, and Laws.

The court did not err in refusing to have the panel out of which the jury to try the case was to be selected filled up to twenty-seven men. This exact point has been decided several times by this court, and we deem it only necessary to refer to what is said by the court in regard to the formation of the jury in the case of *Burfey* v. *The State, ante*, p. 519. This disposes of all the errors assigned.

After a careful examination of the record, we find nothing in it that requires us to reverse the judgment. The judgment of the District Court is affirmed.

*Affirmed.*