[Crim. No. 400.   Fourth Appellate District.—July 16, 1940.]

THE PEOPLE, Respondent, v. JAMES FLOYD KING, Appellant.

Joseph K. Coady for Appellant.

Earl Warren, Attorney-General, and Gilbert F. Nelson, Deputy Attorney-General, for Respondents.

GRIFFIN, J.—Appellant and one Bob Jarvis were charged jointly in an information with the crime of grand theft from the person of one Melvyn West. The jury acquitted Jarvis

and convicted King. King appealed from the judgment and an order denying his motion for new trial.

The points relied upon by appellant for the reversal of the judgment and order are (1) that the verdict is contrary to the law and evidence; (2) that the court erred in deciding questions of law arising during the course of the trial; (3) that the district attorney was guilty of prejudicial misconduct in his argument to the jury; and (4) that the jury was guilty of prejudicial misconduct.

On March 23, 1940, appellant was seated in a chop suey parlor on Grand Avenue in Buena Park. West came in at approximately 10 o'clock that night and sat on a stool next to appellant at the bar and ordered a bottle of beer for appellant, Harold Milbrant and Bob Jarvis, who had come in with him. West paid for the beer with a bill from his purse or wallet, which he took from his hip pocket. West had previously worked with appellant and a conversation began. At appellant's suggestion he and West then went through a side door that led out of the building toward a toilet outbuilding about 30 feet distant. As West and appellant went out of the side door and down the steps a scuffle started in which West was knocked down and shoved around. Appellant's two companions appeared on the scene and became involved in the scuffle. Appellant, Jarvis and Milbrant were arrested. The charge against Milbrant was dismissed at the preliminary examination, and he subsequently testified for the prosecution at the trial. According to the testimony of Milbrant, during the scuffle King pushed West around. Soon thereafter appellant placed a wallet under Milbrant's arm for a second, then went around in back of Milbrant and took the wallet out from under his arm. He further testified that he saw the wallet later in appellant's possession, after they had gone from the building. Appellant drove away in a car to another bar with his two companions after the scuffle and was gone for about an hour. He then returned to the chop suey parlor alone. West was still there and accused appellant by saying: "You know what you done" and started an argument. Appellant made no reply and tried to pretend that he did not know West. This was testified to by the woman who operated the bar. The wallet was found by a Mr. Allerd the following day on the ground near another bar where the appellant had gone after the scuffle. The tes-

timony is undisputed that the amount in the wallet when it was taken was $22 and that $5 was hidden among the identification cards of West and was still in the wallet when it was found. The appellant did not take the stand at the trial, but his wife testified that appellant was at home all during the evening in question. The woman who operated the bar and several others who were there testified that they saw appellant and that he was present and involved in the affair. While it is true no one testified having seen the appellant take the wallet from West, West testified that he felt the wallet being taken from his hip pocket in the scuffle.

■ Appellant now argues that the evidence is insufficient to show theft from the person and that Jarvis and Milbrant were accomplices, and that there was no evidence connecting him with the offense charged other than their testimony; that their testimony in this regard was not corroborated and was conflicting and should be disregarded, citing section 1111 of the Penal Code; *People* v. *Kempley,* 205 Cal. 441 [271 Pac. 478], and *People* v. *Hoagland,* 138 Cal. 338 [71 Pac. 359].

Independent of the testimony of Jarvis and Milbrant, the evidence clearly shows that appellant was the only one who had previously sat at the bar with West; that appellant was the only one of the group who saw West pay for the beer from his wallet and who, therefore knew where West carried his wallet. Furthermore, it appears that appellant was the one who asked West to go outside, and the wallet was taken from West in a scuffle that started just as soon as West and appellant went outside of the side door of the building; that after the scuffle, appellant drove to another bar about a mile away and it was near this second bar that the wallet was found the next day lying on the ground not far from the curb; that after remaining at the second bar for an hour appellant returned to the chop suey parlor and was alone; that West was still there when appellant returned; that West immediately accused appellant as heretofore stated; that appellant tried to pretend that he did not know West.

Milbrant testified that he did not at any time take or plan to take the wallet from West's pocket but that he saw the wallet in the possession of the appellant on two different occasions, once during the scuffle, when he heard West accuse appellant of taking his wallet, and at a later time in the car, when he saw the appellant with the wallet in his hand.

Milbrant further testified that he accused the appellant of having the wallet, to which accusation appellant made no reply.

Assuming only for the purpose of argument that Milbrant and Jarvis were accomplices, we are fully convinced that there is ample independent corroboration of their testimony, and that the evidence is sufficient to support the verdict. It is not necessary that the corroborating evidence should go so far as to establish by itself, without the aid of testimony of an accomplice, that the defendant committed the offense charged. The independent evidence may consist of contradictory statements made by the accused or his silence in the face of accusatory statements, or false statements made with respect to matters connected with the commission of the crime. ■ The entire conduct of the accused may be looked to for corroborative circumstances and if therefrom his connection with the commission of the crime may be fairly inferred the corroboration is legally sufficient. (*People* v. *Tinnin,* 136 Cal. App. 301 [28 Pac. (2d) 951]; *People* v. *Negra,* 208 Cal. 64 [280 Pac. 354]; *People* v. *Martinez,* 19 Cal. App. (2d) 599 [66 Pac. (2d) 161].) Where the defendant makes no attempt, by his own testimony or otherwise, to contradict, explain or deny any of the circumstances established against him, the jury is entitled to consider those circumstances in determining his guilt. (*People* v. *Wiezel,* 39 Cal. App. (2d) 657 [104 Pac. (2d) 70]; *People* v. *Schneider,* 36 Cal. App. (2d) 292 [98 Pac. (2d) 215]; *People* v. *Waller,* 14 Cal. (2d) 693 [96 Pac. (2d) 344].) The trial court fully reviewed the evidence taken at the trial before denying the appellant's motion for a new trial. ■ Before the verdict of a jury which has been approved by the trial court can be set aside on appeal upon the ground of insufficiency of the evidence to support it, it must be made clearly to appear that upon no hypothesis whatever is there substantial evidence sufficient to support the conclusion of the trial court. (*People* v. *Tedesco,* 1 Cal. (2d) 211, 219 [34 Pac. (2d) 467].)

■ Appellant next claims prejudicial error in a remark by the court in reference to the nature of the article placed by appellant under Milbrant's arm. We have reviewed the testimony in this respect, together with the court's remark, and we see no merit to this complaint.

142

Appellant next contends that the district attorney was guilty of prejudicial misconduct in his opening argument before the jury wherein he stated that "the evidence is ample to find Mr. King and Mr. Jarvis both guilty of grand theft from the person", and in his closing argument he said "I make no recommendation, frankly, as to Mr. Jarvis, but I submit to you that King is guilty beyond a reasonable doubt in his whole conduct here and in the exercise of his constitutional right not to testify. Take that for what it is worth. . . . So I submit the case to you, . . . and ask that you find Mr. King guilty of grand theft from the person . . . As to Mr. Jarvis, I make no recommendation to you." The appellant argues that the district attorney "about faced" in his opening and closing argument; that such conduct prejudiced appellant, as shown by the jury's verdict. It is likewise argued that the district attorney's reference to appellant's constitutional right not to testify, taken into consideration with all the other statements, was highly prejudicial; that "the only reason King didn't go on the stand was not because of any sense of guilt in this case, but because of two prior charges of several years ago . . . and to which he had entered pleas of guilty". The comments above mentioned are fully authorized under section 1323 of the Penal Code, wherein it is provided that the failure of the defendant to explain or to deny his testimony or any evidence and the facts in the case against him may be commented on by counsel. At no time during the argument was any objection made by appellant to the remarks of the district attorney. Under these circumstances an appellate court will not consider a claim as to the misconduct of counsel in arguments unless objection is so made. (*People* v. *Fleming,* 166 Cal. 357, 377 [136 Pac. 291, Ann. Cas. 1915B, 881]; *People* v. *Harris,* 219 Cal. 727 [28 Pac. (2d) 906].)

Appellant next complains of claimed remarks made by a juror after the trial, and asks this court to consider those remarks on appeal. Appellant states in his brief that his counsel talked with one of the jurors after the trial and she informed him that one of the other jurors, who she thought was a former police officer in Orange County, "stated that King had been convicted twice" and that she was "coerced into a hurry-up verdict because some of the jurors didn't wish to be late for dinner".

In presenting this argument to the trial court on the motion for new trial, counsel for appellant stated: "I realize that an affidavit attacking their own verdict would be out of place" and proceeded to relate the above-mentioned conversation to the trial court as a ground for the granting of a new trial. Appellant's counsel's conception of the law was correct, for it is well settled that jurors are legally disabled to impeach their verdict by any means, whether it be by affidavit or by testimony or by extrajudicial statements, except only in the cases provided by statute. (*People* v. *Reid,* 195 Cal. 249 [232 Pac. 457, 36 A. L. R. 1435] ; *People* v. *Gidney,* 10 Cal. (2d) 138 [73 Pac. (2d) 1186].) The facts in the instant case do not come within the exception.

The judgment and order are affirmed.

Barnard, P. J., and Marks, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on July 30, 1940, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on August 15, 1940. Carter, J., voted for a hearing.