[Crim. No. 1087. Second Appellate District, Division One.—November 12, 1924.]

## THE PEOPLE, Respondent, v. MURDOCK KELLY, Appellant.

[1] CRIMINAL LAW—EMBEZZLEMENT—ALLEGED MISCONDUCT OF PROSE-CUTOR—WAIVER OF OBJECTION—APPEAL.—A defendant convicted on a charge of embezzlement cannot on appeal from the judgment of conviction avail himself of alleged error from misconduct on the part of the prosecutor while addressing the jury, where no objection is shown to have been taken to any such conduct on the part of the prosecutor, nor was the trial court at any time requested to act in the matter, and on a hearing of the motion for a new trial, where a consideration of the question was involved, the trial court found against defendant's contention.

[2] ID.—CONSPIRACY—STATEMENTS OF PROSECUTOR—ALLEGED MISCON-DUCT—EVIDENCE.—In this prosecution for embezzlement perpetrated on a bank, alleged misconduct on the part of the prosecutor in stating in his opening statement to the jury that he expected to prove that a conspiracy existed between defendant and his co-defendant to defraud the bank, worked no prejudice to defendant's rights in view of the evidence.

[3] ID.—EMBEZZLEMENT—FRAUD.—The crime of embezzlement necessarily includes a fraud as against the person from whom the money or property is embezzled.

[4] ID.—EXPRESSIONS OF OPINION—RIGHT OF COUNSEL.—An attorney is not justified in personally expressing an opinion, not based upon evidence, with reference to the guilt or the innocence of a defendant, or as to the existence of any material fact in the case; but it is not improper that he argue the facts and express an opinion or belief that a certain conclusion must necessarily follow therefrom.

[5] ID.—VIEWS ON EVIDENCE—STATEMENTS OF PROSECUTOR—ABSENCE OF ERROR.—In such prosecution, no error was committed by the prosecutor in that part of his closing argument to the jury in which

1. When improper contentions of counsel require new trial, notes, 56 **Am. Rep.** 812; 58 **Am. Rep.** 648; 9 **Am. St. Rep.** 449. See, also, 2 **R. C. L.** 438; 8 **Cal. Jur.** 258.

2. See 2 **R. C. L.** 410; 8 **Cal. Jur.** 259.

3. What constitutes embezzlement, note, 98 **Am. Dec.** 126.

4. Expression of opinion of accused as improper argument by prosecuting attorney, note, **Ann. Cas.** 1916A, 431. See, also, 2 **R. C. L.** 414; 8 **Cal. Jur.** 268.

he was merely endeavoring to state the facts as shown by the evidence and therefrom "to state his views, his beliefs, his conviction as to what the evidence establishes."

[6] ID.—FAILURE OF DEFENDANT TO DENY TESTIMONY—COMMENT OF PROSECUTOR—ABSENCE OF PREJUDICE—EVIDENCE.—In such prosecution, it cannot be said, in view of the evidence, that the error (assuming it to be such), claimed to have arisen because of comment by the prosecutor directed to the fact that the defendant, either personally or through evidence given by other witnesses, had not denied the testimony from which the guilt of said defendant could be inferred, resulted in a miscarriage of justice.

[7] ID.—PREVIOUS RELATIONSHIP BETWEEN DEFENDANTS—EVIDENCE.— In such prosecution, the trial court did not commit error in permitting the prosecution to introduce evidence relating to certain business transactions which occurred between defendant and his codefendant at a time antedating the offense in question by a period of about five months, where no criminal acts were either shown or attempted to be shown by such evidence, its purpose and effect being merely to establish the relationship which existed between the two defendants.

[8] ID.—STATEMENT OF DEFENDANT—CONFESSION—ADMISSION.—In such prosecution, a statement made by defendant that he had received a part of the money which was embezzled, and that if permitted to do so he would "phone to some of his friends and would be able to procure the money to clear up the shortage," was not a confession of guilt, but amounted to an admission only.

[9] ID.—ADMISSIONS—PRELIMINARY PROOF UNNECESSARY.—As to admissions no preliminary proof is required regarding the absence of force or violence, or any of the matters of kindred nature, in order that evidence thereof may be admitted.

[10] ID.—IMMATERIAL QUESTIONS—ABSENCE OF PREJUDICE.—In such prosecution, in view of the fact that it was unnecessary to prove a statement made by defendant, which amounted to an admission only, by questions intended to bring out the absence of offer of reward or hope of immunity, or force, threat, duress, or violence, and that the statement was freely and voluntarily made, to which questions objection was made on the ground that they called for a conclusion of the witness, whether or not such questions called for conclusions of the witness would not be determinative of prejudicial error, and would be immaterial.

8. Offer to compromise criminal charge and admissions made in connection therewith as admissible, note, 16 **Ann. Cas.** 458. See, also, 1 **R. C. L.** 472; 8 **Cal. Jur.** 98.

9. See 8 **Cal. Jur.** 99.

[11] Id.—Election of Act Relied upon for Conviction—Records—Instructions.—In such prosecution, defendant's contention that an election was not made by the prosecution upon which specific act of embezzlement it would rely for a conviction cannot be sustained where the court's minutes show that defendant's motion to compel the prosecution to make an election was granted, and the court explicitly instructed the jury with reference to such election.

[12] Id.—Embezzlement—Larceny—Evidence.—In such prosecution, the offense committed by defendant and his codefendant was that of embezzlement as denounced by section 504 of the Penal Code, and not larceny, where said codefendant was a teller in a bank and it was the funds of the bank which were entrusted to the possession of said codefendant which were misappropriated by him, assisted by defendant.

[13] Id.—Accomplice—Defendant's Admission Sufficient Corroboration.—In such prosecution, the testimony of defendant's accomplice was sufficiently corroborated by defendant's admission that he received a part of the money which was embezzled, and that if permitted to do so he would "phone to some of his friends and would be able to procure the money to clear up the shortage," in that such admission tended to connect defendant with the commission of the offense.

[14] Id. — Corroborative Evidence — Character Required.—Evidence corroborative of the testimony of an accomplice will not be sufficient if it be of no greater strength than to justify a mere suspicion of defendant's guilt. On the other hand, it is not necessary that such incriminating evidence be corroborative of each and every fact testified to by the accomplice; but all that is required is that, standing alone, it tends to connect the defendant with the commission of the offense, and it may be slight and of itself entitled to but little consideration.

[15] Id.—Confession—Corroboration.—A confession by a defendant on trial would be sufficient corroboration.

(1) 17 C. J., p. 62, sec. 3332. (2) 17 C. J., p. 298, sec. 3638. (3) 20 C. J., p. 433, sec. 20. (4) 16 C. J., p. 897, sec. 2240, p. 908, sec. 2257. (5) 16 C. J., p. 896, sec. 2240. (6) 16 C. J., p. 903, sec. 2249. (7) 16 C. J., p. 546, sec. 1042. (8) 1 C. J., p. 1363. (9) 16 C. J., p. 629, sec. 1247. (10) 17 C. J., p. 331, sec. 3674. (11) 16 C. J., p. 863, sec. 2176. (12) 20 C. J., p. 450, sec. 42. (13) 16 C. J., p. 706, sec. 1440. (14) 16 C. J., p. 701, sec. 1434, p. 704, sec. 1438, p. 706, sec. 1439. (15) 16 C. J., p. 706, sec. 1440.

11. See 8 Cal. Jur. 229–231.
12. See 9 R. C. L. 1266; 10 Cal. Jur. 240.
13. See 1 R. C. L. 171; 8 Cal. Jur. 178.
14. See 8 Cal. Jur. 179.
15. Confession of defendant as sufficient corroboration of accomplice. Note, Ann. Cas. 1916C, 570. See, also, 8 Cal. Jur. 180.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order denying a new trial. John W. Shenk, Judge. Affirmed.

The facts are stated in the opinion of the court.

Lorrin Andrews and Mulligan & Plummer for Appellant.

U. S. Webb, Attorney-General, John W. Maltman, Deputy Attorney-General, and John L. Flynn for Respondent.

HOUSER, J.—Defendant and one Talbott were charged jointly with the crime of embezzlement. From a judgment of conviction and an order denying his motion for a new trial, defendant Kelly appeals to this court.

[1] The first point made by counsel is that the deputy district attorney in charge of the prosecution of the case on trial was guilty of gross misconduct while addressing the jury, and which misconduct resulted in prejudicially affecting defendant's rights—the first specification of error in that regard being that, although defendant Kelly had not been called as a witness on the trial of the action, nor had his photograph while a convict in a state prison been introduced in evidence, the deputy district attorney by trickery, unfair means, and unethical conduct attempted to get such evidence before the jury by surreptitiously exhibiting such photograph to the jury during his closing argument, and "laughing and sneering" in such a manner as to induce the jury to believe that the said defendant was an ex-convict. Assuming the truth of the charge, the record fails to show that any objection was taken by defendant to any such conduct on the part of the deputy district attorney; nor was the court at any time requested to act in the matter. Furthermore, on a hearing of the motion for a new trial, where a consideration of the question was involved, the trial court found against appellant's contention. In such circumstances it must be held that defendant cannot here avail himself of such error.

[2] Further alleged misconduct on the part of the deputy district attorney and error on the part of the court is charged in that in the opening statement made by the

deputy district attorney he said in effect that, although defendant Kelly was charged with the crime of embezzlement from a bank, he expected to prove that a conspiracy existed between defendant Kelly and his codefendant Talbott to defraud the bank; to which statement objection was made on the ground that defendant Kelly was not charged with the crime of conspiracy to defraud and that evidence thereof would not be pertinent to any issue in the case. The objection was overruled by the court. [3] The crime of embezzlement necessarily includes a fraud as against the person from whom the money or property is embezzled. In the instant case, the confession of Talbott, who was Kelly's confederate in the embezzlement of the funds of the bank, shows that the purpose on the part of the defendants was to misappropriate moneys which lawfully came into the possession of Talbott as a teller of the bank, and if the conspiracy which the district attorney expected to prove consisted in an unlawful agreement between the defendants to commit the crime of embezzlement, the authorities are numerous which hold that evidence thereof would have been admissible. The language used by the deputy district attorney in describing the action of the defendants as constituting a conspiracy to defraud the bank, while perhaps not as apt as might be wished, in view of the evidence, certainly worked no prejudice to defendant's rights in the premises.

The deputy district attorney is also charged with misconduct in that, in his closing argument to the jury, in commenting upon the actions of defendant Kelly, he said:

"The boy himself, Talbott, tried in his extremity, when he found he could not get the money back from Kelly, when those deals he and Kelly were talking about did not come through and he was facing ruin in the bank, as soon as they found it out, then he twisted and squirmed, then he drew this sight draft on the Maine Bank, knowing it would take ten or twelve days to come back and he would have that ten or twelve days it would take it to come back, meantime hoping all the time Kelly would clear it, and in my opinion Kelly never intended to do it, and I think the facts throughout this long period of months showed he never intended to do it. Not only that, but when the sight draft was to come back from Maine the boy again saw the thing staring him in

the face and he and Kelly discussed other means of taking
care of it temporarily until some of Kelly's more or less
ephemeral schemes would come through and he could pay
the money back. So he worked out the scheme of the bonds
and put the bonds back in there where he had loaned this
money on bonds, and the bonds were there as security, and
he staged a hold-up in order to try to free himself from his
awful predicament in which he found himself with ruin
staring him in the face. Telling you all about it beforehand.
There is no denial of it. There is not a single word of de-
nial of the facts as brought out in this case."

[4] Having to do with that part of the statement made
by the deputy district attorney to the effect that in his
opinion Kelly never intended to do certain things, it is well
settled, both by adjudicated cases and by rules covering the
ethical conduct of lawyers in the trial of a cause, that an
attorney is not justified in personally expressing an opinion,
not based upon evidence, with reference to the guilt or the in-
nocence of a defendant, or, indeed, as to the existence of any
material fact in the case. But it is not improper that he argue
the facts and express an opinion or belief that a certain con-
clusion must necessarily follow therefrom. (*People* v. *Rogers,*
163 Cal. 476 [126 Pac. 143]; *People* v. *Weber,* 149 Cal.
325 [86 Pac. 671]; *People* v. *McMahon,* 124 Cal. 435 [57
Pac. 224].) In the case of *People* v. *Romero,* 143 Cal. 458
[77 Pac. 163], it appears that the district attorney in argu-
ing to the jury said: "The fact of the business is that
Joaquin Romero had become jealous and there was a little
feeling caused by the occurrence at the hall and these men
met on the public road, and one word brought on another.
Joaquin said this, Dolorez said that, and the thing continued
until they got red hot, and Joaquin pulled out his revolver
and fired at him. That is how that thing happened." The
ruling of the court was: "This was legitimate argument,
fully justified by the evidence in the case. Counsel has the
right on the argument to fully state his views as to what the
evidence shows, and as to the conclusions to be fairly drawn
therefrom, and in what is quoted above the district attor-
ney did no more than this."

[5] In the instant case the language to which objection
is made was not nearly as objectionable as that used in the

case last cited. It is apparent that the deputy district attorney was merely endeavoring to state the facts as shown by the evidence and therefrom "to state his views, his beliefs, his conviction as to what the evidence establishes" (*People* v. *Weber,* 149 Cal., at p. 341 [86 Pac. 671, 677]), and consequently that no error was committed.

[6] Regarding the statement made by the district attorney that "there is no denial of it; there is not a single word of denial of the facts as brought out in this case"—and other statements to like effect—the record shows that upon objection being made thereto by defendant, followed by the court's inquiry of the deputy district attorney as to whether or not he was referring to defendant's failure to take the witness-stand, and the reply of the deputy district attorney, "No, not necessarily at all"; said remark was immediately followed by the further statement by the deputy district attorney that, "But where we put on a case, where there is no denial of the facts, is what I am talking about. There is no attempt on the part of any witness, and there must have been men in Long Beach, there were lots of people in Long Beach who evidently knew Kelly and who knew Talbott. Nobody has appeared here to deny a single statement from start to finish that has been put upon the stand here"; whereupon the court admonished the jury that "statements of counsel are not to be deemed evidence. It is improper to refer in argument to the fact that the defendant has not taken the stand and counsel for the prosecution has distinctly disavowed any intention of referring to that. Counsel has the right to refer to the fact, if it be a fact, that certain facts which may have been made by competent proof on behalf of the defendant aside from his own testimony, that that has not been done." In addition thereto, the court instructed the jury that "if counsel, upon either side, have made any statements in your presence concerning the facts of the case, you must be careful not to regard such statements as evidence, and must look entirely to the proof in ascertaining what the facts are."

Section 1323 of the Penal Code covers the principle that a defendant cannot be compelled to be a witness against himself; also that neither his neglect nor his refusal so to do may in any manner prejudice him or be used against him

on the trial or proceeding. The comment made by the deputy district attorney was directed to the fact that defendant Kelly, either personally or through evidence given by other witnesses, had not denied the testimony from which the guilt of said defendant could be inferred. The disavowal by the deputy district attorney of any such intention perhaps was not sufficient to eradicate from the minds of the members of the jury the fact that attention had been directed to such failure or neglect on the part of defendant Kelly to deny the incriminating facts; but, to the contrary, the natural effect would be to accentuate it. While it is true that the admonition and the instruction of the court given to the jury tended toward a correction of the error, the jury was not expressly told that its duty was to utterly disregard such statements by the deputy district attorney. The question is whether or not the alleged error was of such importance as to justify a reversal of the judgment. In *People* v. *Kromphold,* 172 Cal. 512 [157 Pac. 599], which was a murder case, and in which error was predicated upon the fact that the district attorney in his argument to the jury had commented upon the failure of the defendant to deny certain facts testified to by other witnesses, the court said: "While it was wrong for the district attorney to comment at all on the failure of defendant to testify upon this subject, it would be most unreasonable to assume in the light of the attitude of the trial judge in the matter and the nature of the remarks, that the jury could have been influenced to the prejudice of the defendant by the statement complained of. (See *People* v. *Sansome,* 98 Cal. 235 [33 Pac. 202].) Certainly we cannot hold that this statement 'has resulted in a miscarriage of justice.' " In that case the "attitude of the trial judge" was indicated in his statement to the district attorney "that he should not comment on the defendant's omission to testify to any particular fact, and suggested that he be extremely careful in that respect." A similar situation was involved in the case of *People* v. *Mayon,* 188 Cal. 237 [24 A. L. R. 1383, 205 Pac. 435]. Among other things, the court said: "The evidence against the defendant was conclusive and practically uncontradicted. It is true it depended in part upon the testimony of an accomplice, but Weiss himself gave detailed evidence

along substantially the same line, and the seized articles given in evidence were strongly corroborative. Only the rejection of the testimony of both of the principal witnesses for want of credibility could have defeated a conviction, and the reference to defendant's failure to testify could hardly have served to discredit the evidence of the prosecution. While in 'no manner justifying the improper comments of the district attorney, we think it is a case for the application of section 4½ of article VI of the constitution.'' In this connection, see, also *People* v. *Finali,* 31 Cal. App. 479 [160 Pac. 850] ; *People* v. *Scott,* 66 Cal. App. 200 [225 Pac. 767].

Considering the evidence in the instant case at its full face value, and without reference to the objections thereto which will later receive attention herein, it cannot be said that the error (assuming it to be such) to which attention has just been directed resulted in a miscarriage of justice.

[7] Appellant specifies further error in that the court permitted the prosecution to introduce evidence relating to certain business transactions which occurred between the two defendants at a time antedating the offense in question by a period of about five months. At most, the only disadvantage which could have resulted to defendant by reason of the receipt of the evidence in question would have been an inference arising from the fact of intimacy between the defendants, either that each had the opportunity to conspire with the other to commit the crime, or that such a conspiracy actually existed. As no criminal acts were either shown or attempted to be shown by such evidence, and as its purpose and effect were merely to establish the relationship which existed between the two defendants, we see no compelling reason for its rejection.

Appellant next assigns as error several rulings by the court either on the admission or the rejection of certain evidence. No authority is cited to sustain either or any of such specifications. After consideration of each of the alleged errors, we are of the opinion either that the point is not well taken, or, at most, that no prejudicial harm to appellant resulted therefrom.

A further specification of error of the court with reference to the admission of evidence consists in the overruling of

defendant's objection to preliminary questions asked a witness concerning certain statements made by defendant which amounted to either an admission or a confession of guilt. The questions were as to whether or not offer of reward or hope of immunity was held out to defendant; or whether or not any force, threat, duress, or violence was offered him; and finally whether or not his statement was freely and voluntarily made. The only objection to such questions made by defendant's counsel was that the question called for a conclusion of the witness. The statements made by the defendant were, in substance, that he had received a part of the money which was embezzled, and that if permitted to do so he would "phone to some of his friends and would be able to procure the money to clear up the shortage." As is said in the case of *People* v. *Ferdinand,* 194 Cal. 555 [229 Pac. 341] : "An admission as applied to criminal law is something less than a confession, and is but an acknowledgment of some fact or circumstance which in itself is insufficient to authorize a conviction, and which tends only toward the proof of the ultimate fact of guilt. On the other hand, a confession by a defendant leaves nothing to be determined, in that it is a declaration of his intentional participation in a criminal act, and must be a statement of such a nature that no other inference than the guilt of the defendant may be drawn therefrom" (citing cases).

[8]  As thus tested it is clear that the statement made by defendant herein was not a confession of guilt, but amounted to an admission only. [9]  The rule is well established that as to admissions no preliminary proof is required regarding the absence of force or violence, or any of the matters of a kindred nature, in order that evidence thereof may be admitted. (*People* v. *Knowlton,* 122 Cal. 357 [55 Pac. 141] ; *People* v. *Jan John,* 144 Cal. 284 [77 Pac. 950] ; *People* v. *Wilkins,* 158 Cal. 530 [111 Pac. 612] ; *People* v. *Ammerman,* 118 Cal. 23 [50 Pac. 15] ; *People* v. *Hickman,* 113 Cal. 80 [45 Pac. 175] ; *People* v. *Willard,* 150 Cal. 543 [89 Pac. 124] ; *People* v. *Le Roy,* 65 Cal. 613 [4 Pac. 649].)

[10]  In view of the fact that proof of the matters attempted to be established by the questions to which objection was made was wholly unnecessary, whether or not such questions called for conclusions of the witness would not be

determinative of prejudicial error, and for present purposes would be immaterial.

[11]  After all the evidence, with the exception of that relating to defendant's admissions, had been introduced, defendant made a motion that the prosecution be compelled to elect upon which specific act of embezzlement it would rely for a conviction. Appellant complains that such an election was not made. Although the reporter's transcript of the proceedings at the trial is silent as to what action was taken on the motion, the clerk's minutes of the court show that the motion was granted. In addition thereto, the jury was instructed by the court that, "If you believe from the evidence beyond a reasonable doubt that in July, 1923, Four Hundred Dollars was entrusted by the Pacific Southwest Trust and Savings Bank to one C. M. Talbot, and if you further believe from the evidence beyond a reasonable doubt that C. M. Talbot did convert the said Four Hundred Dollars to his own use, and if you further believe from the evidence beyond a reasonable doubt that the defendant Kelly did aid and abet C. M. Talbot to convert the said Four Hundred Dollars to the use of the said C. M. Talbot, then you must find the defendant guilty."

In the case of *People* v. *Scott,* 24 Cal. App. 440 [141 Pac. 945], it is said: "The better practice is, of course, to designate at the beginning of the trial the particular act for which a conviction is sought, but it is manifest that the purpose of the rule will be accomplished if at any time before the case is submitted the jurors are clearly informed as to the particular offense of which they are asked to find the defendant guilty." (See, also, *People* v. *Castro,* 133 Cal. 11 [65 Pac. 13]; *People* v. *Williams,* 133 Cal. 165 [65 Pac. 323]; *People* v. *Ruiz,* 48 Cal. App. 693 [192 Pac. 327]; *People* v. *Martinez,* 57 Cal. App. 771 [208 Pac. 170].)

Considering that the court's minutes show that defendant's motion to compel the prosecution to make an election was granted, and because of the further fact that the court explicitly instructed the jury with reference to such election, it becomes apparent that appellant's point is not sustainable.

[12]  It is urged that the judgment should be reversed for the alleged reason that the offense, if any, committed

by defendants was that of larceny, rather than embezzlement. Defendant Talbott was a teller in a bank and it was the funds of the bank which were entrusted to the possession of Talbott which were misappropriated by him, assisted by his codefendant. The point made by appellant is covered by the provisions of section 504 of the Penal Code, which, among other things, provides that every "clerk, or servant, or agent of any association, society, or corporation (public or private), who fraudulently appropriates to any use or purpose not in the due and lawful execution of his trust, any property which he has in his possession or under his control by virtue of his trust, or secretes it with a fraudulent intent to appropriate it to such use or purpose, is guilty of embezzlement."

Section 971 of the Penal Code provides that: "The distinction between an accessory before the fact and a principal, . . . in cases of felony, is abrogated; and all persons concerned in the commission of a felony, whether they directly commit the act constituting the offense, or aid and abet in its commission, though not present, shall hereafter be prosecuted, tried and punished as principals, . . . "

In the case of *People* v. *Rowland,* 12 Cal. App. 6 [106 Pac. 428], in which a secretary and cashier of a bank was charged with the embezzlement of its funds, the court, in considering a question similar to the one here presented, said: "The statute seems to have been enacted with the object of meeting the exigencies of just such circumstances as appear in the case at bar. We do not suppose that the proposition will be challenged that, under the terms of the quoted section of the Penal Code (504), the act of secreting property of another by his agent, into whose hands such property has come for his employer, with the intent to convert it or to appropriate it to a use or purpose not within the scope of the objects of the fiduciary relation, amounts to a misappropriation of such property and therefore embezzlement."

It would therefore appear that appellant's contention is untenable.

[13] Section 1111 of the Penal Code provides in substance that a conviction of a defendant cannot be had on the testimony of an accomplice unless such testimony be

corroborated by such other evidence as shall tend to connect the defendant with the commission of the offense. Appellant contends that Talbott was an accomplice of defendant, and that Talbott's testimony was not sufficiently corroborated to sustain defendant's conviction.

It is conceded by the respondent that Talbott was an accomplice of defendant Kelly—the only question in regard to appellant's contention being as to the sufficiency of the corroborating evidence. Talbott testified fully regarding the commission of the offense by himself, aided and abetted by defendant Kelly, and two witnesses gave evidence of Kelly's admission after his arrest, in substance that he received a part of the money which was embezzled, and that if permitted to do so he would "phone to some of his friends and would be able to procure the money to clear up the shortage." An early case (*People* v. *Ames,* 39 Cal. 403) lays down certain illuminating principles with reference to the construction which should be placed upon the statute in question. Among other things, it is there pointed out that even if such evidence raised "a suspicion of the guilt of the accused" the demands of the statute would be met. **[14]** But that doctrine has since been repudiated, and it may now be regarded as settled law that the corroborating evidence will not be sufficient if it be of no greater strength than to justify a mere suspicion of defendant's guilt. (*People* v. *Thompson,* 50 Cal. 480; *People* v. *McLean,* 84 Cal. 482 [24 Pac. 32]; *People* v. *Sternberg,* 111 Cal. 3 [43 Pac. 198]; *People* v. *Barker,* 114 Cal. 620 [46 Pac. 601]; *People* v. *Bunkers,* 2 Cal. App. 205 [84 Pac. 364, 370].) On the other hand, it is not necessary that such incriminating evidence be corroborative of each and every fact testified to by the accomplice; but all that is required is that, standing alone, it tends to connect the defendant with the commission of the offense. It may be slight (*People* v. *Melvane,* 39 Cal. 616), and of itself entitled to but little consideration (*People* v. *McLean,* 84 Cal. 482 [24 Pac. 32]). "It is not required that it be absolutely convincing; nor need it extend to every fact and detail covered by the statements of the accomplices." (*People* v. *Bunkers,* 2 Cal. App. 205 [84 Pac. 364, 370].) "It need not be strong; it is sufficient if it tends to connect the defendant with the commission of the offense, though if it

stood alone it would be entitled to but little weight (citing
case). Nor need it extend to every fact and detail covered
by the statements of the accomplice. (*People* v. *Kunz,* 73
Cal. 313 [14 Pac. 836]; *People* v. *Cloonan,* 50 Cal. 449.)''
(*People* v. *Barker,* 114 Cal. 620 [46 Pac. 601].) Neither
need it ''be evidence tending to establish the precise facts
testified to by the accomplice.'' (*People* v. *Cloonan,* 50
Cal. 449. To the same effect, see *People* v. *Garwood,* 11
Cal. App. 665 [106 Pac. 113]; *People* v. *Leavens,* 12 Cal.
App. 178 [106 Pac. 1103]; *People* v. *Martin,* 19 Cal. App.
295 [125 Pac. 919].) **[15]** Clearly a confession by the de-
fendant on trial would be a sufficient corroboration. (*People*
v. *Tobin,* 39 Cal. App. 76 [179 Pac. 443]; *People* v. *Rich-
ardson,* 161 Cal. 552 [120 Pac. 20]; *People* v. *Josselyn,* 39
Cal. 393, 400.)

It is held in the case of *People* v. *Armstrong,* 114 Cal.
574 [46 Pac. 611], that an admission by the defendant which
showed his criminal connection with the commission of the
offense was all the corroboration that was required. To the
same point is the language in *People* v. *Richardson,* 161
Cal. 552, 563 [120 Pac. 20], where it is said: ''Her evidence
was sufficient proof of the *corpus delicti* to warrant the
introduction of evidence of admissions or confessions on the
part of defendant for purposes of the necessary corrobora-
tion.'' In the Armstrong case the admissions made by the
defendant were far from amounting to a confession of guilt;
indeed, in many respects they were susceptible of an inter-
pretation which would show his innocence of guilty intent.
Notwithstanding such fact, the court held it to be a sufficient
corroboration of the testimony of the accomplice. The de-
fendant in the instant case did not make a full confession.
What he did say was in effect that he had received a part
of the stolen funds, and that if given an opportunity he
would ''clear up the shortage.'' Bearing in mind that an
admission is sufficient; that it need not be strong, but, to
the contrary, that it may be slight; that if standing alone
it might be entitled to but little weight; and that it need
not extend to every fact testified to by the accomplice,—we
are constrained to hold that the requirements of the statute
were fulfilled in that the admission of the defendant tended
to connect him with the commission of the offense.

No prejudicial error appearing, it is ordered that the judgment and the order denying the motion for a new trial be and the same are affirmed.

Conrey, P. J., and Curtis, J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on January 8, 1925.

All the Justices concurred, except Shenk, J., who, deeming himself disqualified, did not participate.